IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHY F.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 3:18-cv-01242-MC

OPINION AND ORDER

**MCSHANE, Judge**:

Plaintiff Cathy F. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to credit Plaintiff's testimony; (2) improperly crafting Plaintiff's residual functional capacity ("RFC"); and (3) improperly finding Plaintiff able to work as an office helper and mail clerk. Pl.'s Br. 12–19, ECF No. 14. Because there is substantial evidence in the record to support the ALJ's findings and any errors are harmless, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB on October 20, 2014, alleging disability since June 12, 2013. Tr. 78, 202–08. Her claim was denied initially and upon reconsideration. Tr. 107–11, 106. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Paul Robeck on May 4, 2017. Tr. 122–23, 173, 17. ALJ Robeck denied Plaintiff's claim by a written decision dated June 16, 2017. Tr. 14–37. Plaintiff sought review from the Appeals Council and was denied on May 11, 2018. Tr. 1–6. Plaintiff now seeks judicial review of the ALJ's decision. Plaintiff was 43 years old at the time of her alleged disability onset and 47 at the time of her hearing. *See* tr. 79, 17. Plaintiff has an 11th grade education and a GED and worked as a clerk in various call centers. Tr. 81, 834, 63, 232. Plaintiff alleges disability due to "mental disorders separately and in combination with pain disorders." Pl.'s Br. 2.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either

affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## I. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). When there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly

contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair,* 885 F.2d at 603). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. Plaintiff testified that she did not complete her college

degree because she could not focus or pass tests. Tr. 47–48. She waitressed, cashiered, worked at a call center, and worked at a hotel. Tr. 48. In 2013 she was in an automobile accident and her head "rotated all the way around." Tr. 46–47. Now she cannot focus, is impulsive, and has a hard time finishing tasks. *Id.* She has a lot of pain when she sits and she has to walk every hour for 15 minutes due to a blood clot. *Id.* She was never able to sit, be quiet, or focus very well. Despite making mistakes, she was able to keep her job through sincerity and improvement. *Id.* Then everything changed after the car crash, including her ability to read, understand and remember things, pay attention, and sit at a desk. Tr. 49–50. This interfered with her job performance because she could not stay on task or do things quickly like she could before. *Id.* She was fired. *Id.* She tried to go back to work nine months later but her doctor said she could not go back to work if she could not do the assignment. Tr. 52–53.

When the ALJ pointed out that Plaintiff had focus and concentration problems before, Plaintiff said they intensified. Tr. 54. Plaintiff said that her post-concussion syndrome made her focus issues worse and she had pain everywhere. Tr. 55. She had skeletal issues, migraines, and began passing out. *Id.* These issues have gotten slightly better and are cyclical. *Id.* She has hip, back, neck, spine, and wrist pain and carpal tunnel. *Id.* She can sit in a chair for 15 minutes, then she needs to walk around for 15 minutes before getting back on task. Tr. 55–56. Her average pain is a six to eight out of 10. Tr. 56. Rest, sleep, and medication help. Tr. 56–57. She is not on any medication because her doctor is reevaluating the issue. Tr. 57. Medication helped in the past, but her doctors are concerned about putting her on it because it will cause other issues. *Id.* She used to do dishes and lift heavy things but can only lift up to 15 pounds now. *Id.* She can walk two blocks but it hurts. Tr. 58. She cannot stoop, kneel, or crawl. *Id.* She can reach her

hands forward and use a keyboard but has pain due to carpal tunnel. *Id.* Her hands were tingling during the hearing. *Id.* She cannot raise her hands overhead, stand, or move well but has no difficulty bathing, dressing, or using the toilet. *Id.* She has two children who take up a lot of her time. Tr. 44–45. She attends most of her children's athletic events and plays. Tr. 46. She does laundry and whatever else needs to be done daily. *Id.* She can do routine household chores for 20 minutes before needing to rest for 20 minutes or more. Tr. 56. She needs help with things like laundry and lifting things. Tr. 59. She makes all the meals in her household but minimizes the time she spends at the counter or sink. *Id.*

The ALJ found that, despite Plaintiff's claim that she is unable to work due to her car accident, Plaintiff had a long history of frequent treatment pre-dating her alleged onset date. Tr. 22. She complained of chronic aching muscles, myalgias, headaches, and upper extremity paresthesia. Tr. 22–23. She signed a controlled medications agreement and had regular osteopathic manipulation treatments before the accident. Tr. 22 (citing tr. 422, 1099, 1237). There was no evidence of a significant increase in Plaintiff's symptoms lasting longer than 12 months since her alleged onset date. Tr. 23. To the contrary, she had not used pain medication since 2014 and reported controlled physical symptoms with regular osteopathic manipulation in November 2016, January 2017, and February 2017. Tr. 23 (citing tr. 1744, 1755, 1781, 1785). She also reported controlled mental health symptoms with medication. Tr. 23 (citing tr. 1709). The ALJ found that because Plaintiff worked with similar or worse symptoms in the past, her impairments would not prevent her from working now. Tr. 23.

The ALJ also found that, on June 15, 2013, Plaintiff received treatment for sinus and nasal congestion, did not go to work the day before, and was diagnosed with viral upper

respiratory illness. Tr. 23 (citing tr. 1067). The record did not mention a car accident or any related symptoms. Tr. 23. On June 17, she reported having been rear-ended on the right side of her vehicle three days prior and complained of worsening neck, back, and hip pain. Tr. 23 (citing tr. 1063).[2] On June 19, she sought treatment again for congestion, did not mention the accident or any related complaints, and appeared well. Tr. 23 (citing tr. 1062). On June 24, she reported worsened neck and back pain and headaches. Tr. 23 (citing tr. 1059). She did not mention hand numbness or dizziness until one month, nausea until two months, or vision until almost three months after the accident. Tr. 23. She now says she hit the back of her head on the seat during the accident but initially denied hitting her head on June 17 and said she could not recall the accident at all in August. Tr. 23; *compare* tr. 1059, 732 *with* tr. 1063, 1260; *see also* tr. 1004. Additionally, she settled her insurance claim from the accident for only $1,700. Tr. 23; *see* tr. 74.

The ALJ found that although Plaintiff's physical symptoms may have increased due to the accident, they were likely not as significant as she alleges. Tr. 23. Plaintiff argues that the ALJ missed the underlying root of her debilitation; specifically, her psychological dysfunction. This intensified after the June 2013 accident and a subsequent accident and Plaintiff maintains that, as a result, it is impossible to separate her psychological dysfunction from her physical pain. Pl.'s Br. 13–14 (citing tr. 1188, 733, 742, 745, 747, 758, 737–38, 837, 838, 957, 823).

The ALJ found that Plaintiff's somatoform disorder[3] was severe. Tr. 19. The ALJ also found, however, that several treating physicians determined that Plaintiff's physical complaints

---

[2] The ALJ cites 1F/254, which appears at tr. 563, throughout his opinion. Based on the June 17, 2013 examination date the ALJ mentions, however, it appears that the ALJ intended to cite 1F/754, which appears at tr. 1063. This Opinion and Order cites to tr. 1063 in lieu of tr. 563.

[3] Somatoform disorder is a mental condition that causes bodily symptoms, including pain. *Somatic Symptom and Related Disorders*, WebMD (last visited January 31, 2020), https://www.webmd.com/mental-health/somatoform-disorders-symptoms-types-treatment#1.

7 – OPINION AND ORDER

were largely related to her mental impairments, including those *before* her alleged onset of disability. Tr. 27 (citing tr. 1188–89, 856, 1004, 1008–09, 832, 838, 827, 830, 847, 745, 749, 752–53, 758, 734, 738). One provider stated in January 2012 that Plaintiff was vague and expansive when describing pain complaints, would not specify a particular area or issue of primary concern, and had a "substantial and significant psychological overlay to her physical symptoms" and "very strong personal identification with her diagnoses" and symptoms. Tr. 1188–89. Plaintiff's alleged onset of disability is June 12, 2013. Tr. 202.

The ALJ further found that there was limited evidence that Plaintiff's physical conditions prevented her from working. Tr. 23. Plaintiff's physical examinations were largely unremarkable, she had few diagnoses, her symptoms were migratory and inconsistent, her complaints were sometimes vague, and she often appeared well and in no acute distress. Tr. 23–27 (citing tr. 1063, 1059, 1050, 1046, 1037, 1029–31, 1026, 1022, 1018, 1010–11, 1004–05, 1260, 984, 986, 669, 541, 966, 934, 915, 911, 910, 906, 894, 873, 865, 868, 626, 630, 631, 856, 859, 832, 834, 827–28, 847, 849, 659, 663, 819–21, 803, 807, 786, 784, 797, 705, 772–74, 766–68, 714, 745–47, 741–42, 1314, 1317, 1319, 1310–12, 1324, 1326, 1365–68, 1373–75, 1400–02, 1492, 1495, 1497, 1501, 1531, 1533, 1601, 1603, 1608–09, 1632–33, 1640, 1653, 1655, 1670, 1691, 1693, 1744–45, 1751–52, 1755–56, 1781–82, 1785–86).

Plaintiff does not dispute these findings but argues that they do not address or discredit her testimony regarding her cognitive loss. Pl.'s Br. 15. Plaintiff also argues that the ALJ failed to consider Plaintiff's cognitive test results. *Id.* at 14 (citing tr. 47, 49–50, 54, 835–36, 851, 997, 999, 838, 72–73). The ALJ found that Plaintiff's mental symptoms and cognitive complaints fluctuated relative to situational issues. Tr. 28–29. Plaintiff consistently had pressured and rapid

but redirectable speech, but her mental status examinations were "often inconsistent with her complaints of significant cognitive issues." *Id.* (citing tr. 1037–38, 1059, 1026, 984, 1014, 971, 915, 957, 920, 922, 924, 856, 859, 818, 803, 805, 776, 734, 738, 735, 730–33, 1311–12, 1304, 1295, 1324, 1326, 1365–66, 1402, 1492, 1497, 1501, 1553, 1555, 1560, 1562, 1568, 1633, 1640, 1758). Dr. Walker found in February and March of 2014 that Plaintiff had borderline non-verbal intellect and processing speed; mild to moderately impaired nonverbal intellect; moderately impaired attention, executive functioning, learning, and memory; moderate to severely impaired fine motor dexterity; and sustained visual attention and vigilance (regarding time range, though her accuracy was high-average). Tr. 851, 835–36. Dr. Walker opined that it would be difficult for Plaintiff to efficiently fulfill many work settings' requirements, but that if she found a job well-suited to her strengths and weaknesses, she would be most successful with repetition and the ability to take her time. Tr. 838. In August 2013, Plaintiff's neuropsychological status was in the fifth percentile regarding memory and attention and the ninth percentile overall. Tr. 997.

In determining Plaintiff's RFC, the ALJ limited Plaintiff to simple routine tasks without production pace (meaning any job with an hourly or more frequent quota) and only occasional contact with the public and coworkers. Tr. 21. The ALJ gave Dr. Walker's opinions great weight.[4] Tr. 31 (citing tr. 832). Plaintiff fails to show how her neuropsychological testing is inconsistent with the ALJ's RFC finding. Moreover, Plaintiff reported in December 2015 that

---

[4] The ALJ said that "Dr. Walker's opinions are great partial [sic] weight." Tr. 31. The ALJ found that Dr. Walker "performed a comprehensive evaluation of [Plaintiff] and her findings support the mental limitations of performance of simple routine tasks not at a production pace." *Id.* The ALJ also found that the state agency psychological consultants opinions were "*also* given great weight" because they were consistent with Dr. Walker's findings and supported the significant functional mental limitations in the RFC. *Id.* (emphasis added). Based on these statements, the Court construes the ALJ's opinion as giving great weight to Dr. Walker's opinions.

Adderall helped her focus and concentrate and in October 2016 that Wellbutrin helped her mood and focus. Tr. 1366, 1709.

Finally, the ALJ found that Plaintiff's daily activities were inconsistent with her complaints of disabling symptoms and limitations. Tr. 30. Specifically, they revealed that she was active and independent. *Id.* Her walking, sitting, and cognitive abilities were not as limited as she alleged. *Id.* A claimant's daily activities may be grounds for an adverse credibility finding if she "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

Here, the ALJ found that Plaintiff completed a variety of daily tasks. Tr. 30. She attended multiple athletic events and other school events. Tr. 30 (citing tr. 945, 1601, 1608–09, 1703). In late January 2015, she watched a sporting event for three hours. Tr. 30 (citing tr. 1298–99). She drove, ran errands, and drove her children to school and activities. Tr. 30 (citing tr. 786–87, 834, 906, 950–53, 961–63, 1010, 1018); *see also* tr. 987. In August 2013, she drove up to two hours per day. Tr. 30 (citing tr. 984). She made all the meals for her family from scratch every day. Tr. 30 (citing tr. 59). In November 2014, she reported grocery shopping and doing light housework, laundry, and dishes. Tr. 30 (citing tr. 243). In June 2014, she had been trying to find work. Tr. 30 (citing tr. 803). She walked 30 minutes per day as of July 2013, exercised 30 to 60 minutes

per day in April 2016, and walked in a hilly area 30 minutes per day in January 2017. Tr. 30 (citing tr. 1022, 1531–33, 1541, 1774).

Plaintiff argues that the ALJ did not find that these activities were transferrable to a competitive work setting. Pl.'s Br. 16 (citing tr. 56–57, 242, 244–45, 250, 252, 735, 906). The Court agrees. The Court also notes that when Plaintiff attended her children's sporting events and drove for extended periods, she reported worsened pain. Tr. 945, 1601, 1608, 1703, 1298, 787, 834, 1010, 984, 987. Plaintiff's activities do, however, contradict Plaintiffs claims of totally debilitating impairments. *See Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Moreover, the evidence cited above directly contradicts Plaintiff's statements that she could only walk two blocks, sit for 15 minutes, and do 20 minutes of chores. *See* tr. 58, 55–56.

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff was not entirely credible. Therefore, the ALJ did not err in discounting Plaintiff's credibility.

## II. The ALJ's RFC Finding

Plaintiff argues that the ALJ properly weighed Dr. Walker's medical opinions but misconstrued her report and failed to properly incorporate it into the RFC. Pl.'s Br. 16–17. The ALJ found that Dr. Walker's opinions supported the RFC and that the state agency psychological consultants' opinions were consistent with that of Dr. Walker. Tr. 31. Plaintiff argues that Dr. Walker made recommendations beyond those of the non-examining state agency psychological consultants. *Id.* at 17; *compare* tr. 838–39 *with* tr. 82, 87–88, 98, 101–03. Plaintiff also argues that the RFC fails to incorporate Dr. Walker's "requirements," such as clarifying, repeating, breaking things down, and remembering tasks. *Id.* (citing tr. 838). As explained above, Dr.

Walker opined that it would be difficult for Plaintiff to efficiently fulfill many work settings' requirements, but that if she found a job well-suited to her strengths and weaknesses, she would be most successful with repetition and the ability to take her time. Tr. 838. Dr. Walker offered recommendations "for consideration" in a separate section of her report, including a list of things "[i]t may also be helpful [for Plaintiff] to try." *See* tr. 838–39. "An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Carmickle*, 533 F.3d at 1165). Additionally, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." 807 F.3d at 1006. The ALJ properly did so here and was not required to incorporate Dr. Walker's recommendations into the RFC.

Plaintiff next argues that it is clear from Dr. Walker's report that Plaintiff can only work in a sheltered environment and is, therefore, disabled. Pl.'s Br. 17 (citing tr. 832–38, 31, 72–73). Dr. Walker did not opine that Plaintiff could only work in a sheltered environment. *See* tr. 838–39. To the contrary, Dr. Walker said that if Plaintiff found a job well-suited to her strengths and weaknesses, she would be most successful with repetition and the ability to take her time. *See* tr. 838. The ALJ did not misinterpret Dr. Walker's report.

### III. Plaintiff's Ability to Work as an Office Helper and Mail Clerk

Finally, Plaintiff argues that the ALJ found Plaintiff able to work at jobs inconsistent with the RFC. Pl.'s Br. 18–19. "Occupational evidence provided by a VE [] generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). An ALJ may rely on VE occupational evidence that contradicts the DOT, "but only insofar as the record contains persuasive evidence to support the deviation."

*Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ must ask the VE if the evidence he or she provided is consistent with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007). When there is an apparent conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a disability determination. *Id*. (quoting SSR 00-4p, 2000 WL 1898704, at *2). "A conflict is 'apparent' when it is 'manifest' or 'obvious.'" *Sterba v. Colvin*, 2014 WL 7228989, at *2 (D. Or. Dec. 16, 2014); *see* BLACK'S LAW DICTIONARY 105 (8th ed. 2004).

Here, the ALJ found that, based on the VE's testimony, Plaintiff could work as an office helper and mail clerk. Tr. 33; *see also* tr. 63–64. The RFC limits Plaintiff to simple, routine tasks and the DOT states that mail clerk positions require a Reasoning Level of 3. *Compare* tr. 21, 63 *with* DOT 209.687-026, 1991 WL 671813. There exists, therefore, an apparent conflict between the DOT and the VE's testimony that Plaintiff could work as a mail clerk. *See* tr. 63–64; *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding that Reasoning Level 3 complexity is inconsistent with simple, routine tasks). The ALJ did not resolve this apparent conflict. *See* tr. 64. This error is, however, harmless because the ALJ properly found that Plaintiff could work as an office helper. Tr. 33, 64. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (explaining that it was unnecessary to address plaintiff's arguments regarding one occupation because the ALJ properly concluded that plaintiff could perform another occupation). Plaintiff argues that an apparent conflict exists between the state agency psychological consultants' opinions and the DOT. Pl.'s Br. 18–19. The ALJ is only required to resolve apparent conflicts between *VE testimony* and the DOT. SSR 00-4p, 2000 WL 1898704, at *2–4 (emphasis added). Moreover, office helper positions require a Reasoning Level of 2. DOT 239.567-010, 1991 WL 672232.

This is consistent with the limitation to perform simple, repetitive tasks. *See Zavalin*, 778 F.3d at 847 (citing *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005)).

The ALJ properly found that Plaintiff could work as an office helper, an occupation that exists in significant numbers in the national economy. Tr. 32–33. To the extent that the ALJ erred, such errors were harmless.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 5th day of February, 2020.

s/ Michael J. McShane<br>
Michael J. McShane<br>
United States District Judge